**CASE NOS. 26-2029, 26-2030**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, et al.,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as the President of the United States of America, et al.,
*Defendants-Appellees.*

STATE OF MISSOURI, et al.,
*Intervener Defendants-Appellants.*

---

STATE OF CALIFORNIA, et al.,
*Plaintiffs-Appellees*,

v.

UNITED STATES POSTAL SERVICE, et al.,
*Defendants-Appellees.*

STATE OF MISSOURI, et al.,
*Intervener Defendants-Appellants.*

---

Appeal from the U.S. District Court for the District of Massachusetts
The Honorable District Court Judge Indira Talwani
Case Nos. 1:26-cv-11549-IT, 1:26-cv-13917-IT

---

**REPLY BRIEF IN SUPPORT OF STAY PENDING APPEAL**

---

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

Louis J. Capozzi III, #1215872
*Solicitor General*
Benjamin S. Gilberg, #1223910
*Deputy Solicitor General*
J. Michael Patton, #1223909
*Deputy Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*

ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
Louis.Capozzi@ago.mo.gov

*Counsel for the State of Missouri*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................ i

ARGUMENT ............................................................................... 1

I. LWV Appellees have not established standing. ..................... 1

II. The plain text of Title 39 authorizes the Rule; Appellees cannot invoke the major questions doctrine or the APA's arbitrary-and-capricious standard. ....................................... 6

III. The Rule is constitutional. .................................................... 9

IV. Regardless of this Court's decision on the merits, this Court should limit the scope of the injunction. ..................... 10

CONCLUSION ........................................................................... 12

CERTIFICATE OF COMPLIANCE ............................................. 16

CERTIFICATE OF SERVICE ...................................................... 17

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellees, unable to stand on the statutory text, invoke broad fears of the Rule disenfranchising voters and being an unauthorized takeover of state elections. But this rhetoric is based on unfounded fears. The Rule is neither a federal takeover of elections nor prevents States from conducting mail-in or absentee voting. Instead, the Rule imposes modest conditions on the *use of the mail* for voters to cast ballots in federal elections. This Rule is consistent with the statutory text and USPS's "broad[]" authority "to adopt rules and regulations" governing the mail. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 123 (1981). Therefore, this Court should enter a stay of preliminary injunction, or at the very least, limit its scope to Appellee States and thus give States the *option* to comply with the Rule for the 2026 General Elections. Appellees' arguments to the contrary are unpersuasive.

## ARGUMENT

### I. LWV Appellees have not established standing.

LWV Appellees have not met their "burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

LWV Appellees first rely on their members to confer standing. *See* LWV Br. 30–32. They assert that their members "risk ... being unable to vote" because of the Rule. LWV Br. 30. But this "risk" is based on a fear State and local election officials may not be able to "timely or accurately satisfy USPS's new data-submission, envelope design, and verification requirements." Doc. 205 ¶ 42, *LWV*, No. 1:26-cv-11549-IT. "However, [LWV] Plaintiffs would suffer injury (disenfranchisement) . . . *if* the [State] in which they" are registered to vote "failed" to comply with the Rule, *Am. Encore v. Fontes*, 152 F.4th 1097, 1112 (9th Cir. 2025), or *if* USPS's implementation of the Rule does not allow States to upload its lists of mail ballot eligible voters or does not permit eligible ballots to be transmitted. Both scenarios are "too speculative for Article III purposes." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

LWV Appellees only cite to fears of their members and leaders about how the Rule *may* lead to their disenfranchisement. LWB Br. 31 (collecting evidence). But this evidence "fail[s] to make a clear showing that is more than hypothetical or conjectural that a [State] would fail" to comply with the Rule. *Am. Encore*, 152 F.4th at 1112. Thus, LWV

Appellees' disenfranchisement by lack of State compliance theory cannot confer standing.

Regarding their theory that the Rule's implementation will lead to rejected ballots, LWV Appellees' theory rests of a "speculative chain of possibilities." *Clapper*, 568 U.S. at 414. As they alleged in their Supplemental Complaint, the Rule will "exacerbate voters' *fears* that their ballots" will not be transmitted. Doc. 205 ¶ 58, *LWV*, No. 1:26-cv-11549-IT (emphasis added). But "[t]his fear cannot support standing because it 'lacks record support and is highly speculative.'" *Ariz. All. for Retired Ams. v. Mayes*, --- F.4th ---, 2026 WL 2277101, at *8 (9th Cir. Aug. 7, 2026) (en banc) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024)). LWV Appellees point to no evidence that the Rule will disenfranchise voters due to mistakes or errors in USPS's system. "Fear that individual mistakes will recur, generally speaking, does not create a cognizable imminent risk of harm," so neither does speculative fear that mistakes *could* occur. *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (per curiam). Therefore, LWV Appellees do not have standing based on their members.

LWV Appellees also rely on impairment of their "core voter-engagement activities" to argue they have standing. LWV Br. 32. But once again, this theory of injury has been foreclosed by *Alliance for Hippocratic Medicine*. There, the Supreme Court explicitly rejected these exact alleged injuries. *All. for Hippocratic Med.*, 602 U.S. at 394; *see* Intervener Br. 11–12. And just recently in this case, the Supreme Court rejected State Appellees' argument that they were spending money because of the executive order, reaffirming that parties cannot "concretize their injury by expending funds." *Trump v. California*, 609 U.S.__, 2026 WL 2473573, at *4 (Aug. 24, 2026) (per curiam).

LWV Appellees additionally rely on *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 19 (D.C. Cir. 2016), *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024), and *Get Loud Ark. v. Jester*, 171 F.4th 1058, 1064 (8th Cir. 2026), to suggest that the Rule's alleged interference in voter-education and voter-engagement allows standing. *See* LWV Br. 32. But *Newby* predates *Alliance for Hippocratic Medicine*, where the Supreme Court "corrected a common misreading of" resource-diversion standing, *Mayes*, 2026 WL 2277101, at *6, and *Republican National Committee* did not fully respect "this new

legal landscape," *see* 120 F.4th at 411 (Diaz, C.J., concurring). In *Get Loud Arkansas*, the plaintiff organization had standing because the challenged rule prohibited it from using its online registration tool. 171 F.4th at 1064. Here, however, the Rule does not prohibit LWV Appellees from engaging in any of its core activities.

Rather under *Alliance for Hippocratic Medicine*, a voter-registration organization's "mere diversion of resources to educate and train voters on the potential effects of the [Rule] cannot independently establish an injury-in-fact." *Mayes*, 2026 WL 2277101, at *6. Holding otherwise "would turn organizational standing into 'nothing more than a game of semantics,' in which advocacy organizations can simply declare that disfavored government conduct impedes their 'core business activities' without further evidence of harm." *Wis. Voter All. v. Millis*, 166 F.4th 627, 637 (7th Cir. 2026) (per curiam) (quoting *Tenn. Conf. of the NAACP v. Lee*, 139 F.4th 557, 566 (6th Cir. 2025)). Ultimately, "[n]othing prevents [LWV Appellees] from educating voters, raising public concerns about the [Rule], or putting pressure on the legislature to reform the law governing" mail-in voting," but Article III prevents this

Court from issuing an advisory opinion on LWV Appellees' diversion of resources. *Id.* at 637–38.

## II. The plain text of Title 39 authorizes the Rule; Appellees cannot invoke the major questions doctrine or the APA's arbitrary-and-capricious standard.

After brief statutory drive-bys, Appellees immediately turn to the major questions doctrine, California Br. 6, or to nonmailable matter, LWV Br. 10. But of course, this Court "starts by analyzing [the statutes] without reference to the major questions doctrine." *United States v. Freeman*, 147 F.4th 1, 12–13 (1st Cir. 2025). Appellees' skipping this starting point implicitly recognizes that Title 39 "broadly empower[s]" USPS to adopt rules and regulations designed to accomplish an efficient system of collecting, sorting, and delivering mail nationwide—including a mail regulation related to ballots. *Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123; *see also* Intervener Br. 9–11. As Appellees have not shown the Rule is "[in]consistent with a coherent statutory scheme," they have supplied "no reason [for this Court] to look past the statutory text itself." *Freeman*, 147 F.4th at 13. Nor could they. *See* Intervener Br. 9–11.

Appellees invoke the major questions doctrine at too high a level of generality. *See* California Br. 9–11; LWV Br. 16–17. They insist that the Rule is one of "'political significance'" because the Rule "will make mail voting impossible in some States while depriving many voters of mail ballots in others." California Br. 7 (quoting *Biden v. Nebraska*, 600 U.S. 477, 502 (2023)); *see also* LWV Br. 16–17. But the Rule does no such a thing. Rather, it "relates *only* to the use of the U.S. Mail." 91 Fed. Reg. at 54991 (emphasis added). States "retain full autonomy to decide whether (and to what extent) they utilize the U.S. Mail as part of their electoral systems and who can use ballot mail." *Id.* at 54973. And under the Rule, USPS cannot "second-guess" a State's participation list, nor can USPS "inspect[] [] a mail-in ballot's contents, review [an] individual voter's eligibility, or audit[] [] state voter rolls." *Id.* at 54969. But ignoring the Rule's clear text, Appellees rely on speculative fear that the Rule will not allow voters to cast mail-in ballots. *See* California Br. 21–26; LWV Br. 16. Accepting these speculative fears as the basis for "political significance" would plausibly make every agency rulemaking a major question. The Rule does not "force a nationwide transition away from" mail-in ballots but is a modest regulation relating to how they may

be sent. *See West Virginia v. EPA*, 597 U.S. 697, 735 (2022). Therefore, when the actual effects of the Rule are analyzed in "*context*," *see Biden*, 600 U.S. at 508 (Barrett, J., concurring), this Rule is not a question of political significance but merely a modest mail regulation. The major questions doctrine does not save Appellees' claim.

Realizing that their major questions doctrine argument reaches too far, Appellees attempt to argue that the Rule creates an unauthorized category of nonmailable matter in order to shoehorn the Rule into APA review. *See* California Br. 12–14; *see also* LWV Br. 15–18; 39 U.S.C. § 3001(m). But the Rule imposes conditions of federal ballots: It "does not prohibit federal ballots from being mailed altogether." 91 Fed. Reg. at 54973. Therefore, the Rule does not create an unauthorized category of nonmailable matter.

Thus, this Rule, as a USPS regulation, "is exempt from review under the Administrative Procedure Act." *Northern Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 858 (D.C. Cir. 2012). Appellees' broad policy objections to the Rule are therefore irrelevant as it is the "APA's arbitrary-and-capricious standard" that "requires [the] agency action [to] be reasonable and reasonably explained." *FCC v. Prometheus Radio*

*Project*, 592 U.S. 414, 423 (2021); *see also Reese Bros., Inc. v. U.S. Postal Serv.*, 905 F. Supp. 2d 223, 253 (D.D.C. 2012) (holding that "Congress clearly intended to preclude arbitrary and capricious judicial review of the substance of Postal Service regulations, policies and procedures"). Thus, Appellees can only defeat the Rule by showing that it goes beyond its statutory authorization, which as discussed above, Appellees cannot do. Intervener States are therefore likely to succeed on the merits.

## III. The Rule is constitutional.

LWV Appellees argue that the Rule is unconstitutional "because it intrudes on states' sovereign authority to administer elections." LWV Br. 19. But as explained above, it does no such thing because it does not determine voter qualifications or intrude on any other powers reserved to the States. Again, "States … retain complete autonomy to determine the extent to which they utilize the postal system as an aspect of their elections" and, assuming they do decide to utilize it, "States maintain complete control over their own voter registration rolls, deciding who within their jurisdiction is eligible to vote by mail." 91 Fed. Reg. at 54969. By its plain terms, the Rule makes clear that States retain sovereignty over voter eligibility.

Nor does the Elections Clause require that regulations concerning election-related mail be treated differently. While the Elections Clause empowers Congress to set rules for federal elections, U.S. Const. art. I, § 4, the Constitution also specifically authorizes Congress to set rules for a federal postal service, *id.* art. I, § 8, cl. 7. As discussed above, Congress delegated broad authority to USPS to regulate the mail. Under plain statutory text, that broad authority extends to election mail—just like any other type of mail. This is plainly consistent with Congress's authority under the Elections and Postal Clauses.

## IV. Regardless of this Court's decision on the merits, this Court should limit the scope of the injunction.

Appellees' lawsuits were premised on the hyperbolic fear that the Rule threatened "the ability of millions of people to vote by mail"—not on USPS's mailpiece design requirements. California Br. 27; *accord* LWV Br. 1. USPS rejecting non-compliant ballots is the "most significant" part of the Rule, California Br. 6, and also the aspect of the Rule enjoined by the injunction. But it is also the part of the Rule which most increases a State's election integrity efforts. *See Tex. LULAC v. Hughs*, 978 F.3d 136, 147 (5th Cir. 2020). A State is powerless to adopt its own laws regarding how USPS may transmit the State's election mail. *See Air Courier Conf.*

*of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 519 (1991) ("Since its establishment, the United States Postal Service has exercised a monopoly over the carriage of letters in and from the United States.").

Thus, it is no consolation to States who wish to benefit from the Rule's secure transmission requirements to allow them the option to comply with the Rule's election mail logo labeling requirement and to upload list of vote-by-mail voters to USPS portals. These portions of the Rule, standing alone, do not provide the increased ballot security. Thus, Appellees are quite mistaken to suggest that optionally complying with some parts of the enjoined Rule equates to a State benefitting from the Rule's improved mailing security provisions. *See* California Br. 19; LWV Br. 34.

The injunction is "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). LWV Appellees resist this narrowing by insisting they have standing to sue, LWV Br. 30, but as discussed above, they are wrong. Therefore, this Court should at a minimum stay the injunction as to non-Appellee States. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018)

("A plaintiff's remedy *must* be tailored to redress the plaintiff's particular injury." (emphasis added)).

## CONCLUSION

For the foregoing reasons, this Court should enter a stay of the injunction, or at the very least, limit its scope to Appellee States.

Dated: September 8, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre, 1222562
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, #1215872
*Solicitor General*
Benjamin S. Gilberg, #1223910
*Deputy Solicitor General*
J. Michael Patton, #1223909
*Deputy Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov
Michael.Patton@ago.mo.gov
Graham.Miller@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst, 1223911
*Solicitor General*
Jason J. Muehlhoff*
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, 1204350
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez, 1223913
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**LIZ MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ Kelsey L. Smith*
Kelsey L. Smith, 1214635
*Deputy Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

/s/ *Christian B. Corrigan*
Christian B. Corrigan, 1208173
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett, 1218826
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

/s/ *Garry M. Gaskins, II*
Garry M. Gaskins, II, 1223914
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

/s/ *Joseph D. Spate*
Joseph D. Spate, 1209409
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn, 1220093
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

/s/ *David Bryant*
David Bryant, 1222544
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the motion contains 2,274 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Century Schoolbook typeface.

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III